PARIENTE, J.,
concurring in result.
I concur because we cannot conclude that the Hurst[12] error was harmless beyond a reasonable doubt. However, I would reach this conclusion under an analysis consistent with this Court’s opinions in Hurst and Simmons v. State, 207 So.3d 860 (Fla. 2016), as well as Deviney v. State, No. SC15-1903, 213 So.3d 794, 2017 WL 1090560 (slip op. issued Fla. March 23, 2017), which specifically explain the standard for determining whether a Hurst error is harmless beyond a reasonable doubt. The majority’s discussion of harmless error in this case (beginning on page 785), while not incorrect, may create confusion as to how to analyze whether a Hurst error is harmless. See majority op. at 785-89.
In Hurst, we explained the standard by which harmless error should be evaluated:
Where the error concerns sentencing, the error is harmless only if there is no reasonable possibility that the error contributed to the sentence. See, e.g., Zack v. State, 753 So.2d 9, 20 (Fla. 2000). Although the harmless error test applies to both constitutional errors and errors not based on constitutional grounds, “the harmless error test is to be rigorously applied,” [State v. ]DiGuilio, 491 So.2d [1129,] 1137 [ (Fla. 1986) ], and the State bears an extremely heavy burden in cases involving constitutional error. Therefore, in the context of a Hurst v. Florida error, the burden is on the State, as the beneficiary of the error, to prove beyond a reasonable doubt that the jury’s failure to unanimously find all the facts necessary for imposition of the death penalty did not contribute to Hurst’s death sentence in this case. We reiterate:
The test is not a sufficiency-of-the-evidenee, a correct result, a not clearly wrong, a substantial evidence, a more probable than not, a clear and convincing, or even an overwhelming evidence test. Harmless error is not a device for the appellate court to substitute itself for the trier-of-fact by simply weighing the evidence. The focus is on the effect of the error on the trier-of-fact.
DiGuilio, 491 So.2d at 1139. “The question is whether there is a reasonable *793 possibility that the error affected the [sentence].” Id.
Hurst v. State (Hurst), 202 So.3d 40, 68 (Fla. 2016) (last alteration in original). In Davis v. State, 207 So.3d 142 (Fla. 2016), we explained, “As applied to the right to a jury trial with regard to the facts necessary to impose the death penalty, it must be clear beyond a reasonable doubt that a rational jury would have unanimously found that there were sufficient aggravating factors that outweighed the mitigating circumstances.” Id. at 174.
Further, I would not reanalyze the scope of or proper remedy for Hurst errors, which the majority discusses on pages 789-92, because we already addressed these issues, including the inapplicability of section 775.082, Florida Statutes, in Hurst, 202 So.3d at 65-66. I would summarily dispose of this claim, as we have done in several cases, including Deviney, in which we stated that “this Court already rejected [the] argument that section 775.082(2), Florida Statutes (2015), requires a remand to the trial court for imposition of a life sentence.” 213 So.3d at 800, 2017 WL 1090560, at *6.
As for the harmless error analysis in this case, the jury was given instructions regarding three aggravating factors: HAC, CCP, and that the murder was committed during the course of a sexual battery. Majority op. at 786-87. The judge instructed the jury that it must render an advisory sentence recommendation based on whether sufficient aggravating factors existed to impose death and whether those aggravating factors outweighed the mitigating circumstances. Majority op. at 786-87. Following these instructions, the jury returned a recommendation of death by a vote of eleven to one. Majority op. at 787. The jury made none of the requisite factual findings necessary to impose death. See Hurst, 202 So.3d at 44. In fact, although the CCP aggravating factor was submitted to the jury, the trial court did not even find that this aggravating factor was proven.
With regard to mitigation, Jackson presented a considerable amount of mental health mitigation, including evidence of his low IQ, dysfunctional childhood (his biological mother was fourteen and his father abandoned him), and that he was physically and sexually abused. Jackson also presented the testimony of two mental health experts who testified to the effects of his Adverse Childhood Experiences (ACE’s) on his conduct. Majority op. at 767-68. Although there was contrary mental health testimony from the State, we have no way of determining the effect of this mitigation on the jury’s final recommendation for life or death.
It is impossible to determine why one juror dissented from the other members’ vote to recommend a sentence of death— whether the juror did not determine that each aggravating factor was proven, that sufficient aggravating factors existed to impose death, or that the aggravation that existed outweighed the mitigation, or if that juror, for some other reason, determined that death was not an appropriate sentence. Thus, we cannot conclude that the Hurst error in Jackson’s case was harmless beyond a reasonable doubt, or that the Hurst error “did not contribute to [Jackson’s] sentence.” Deviney, No. SC15-1903, 213 So.3d at 800, 2017 WL 1090560, at *5.
For all these reasons, I concur in result but would adhere to the harmless error analysis we adopted in Hurst.
LAWSON, J., did not participate.

. Hurst v. State (Hurst), 202 So.3d 40 (Fla. 2016), petition for cert. filed, No. 16-998 (U.S. Feb. 13, 2017).